Matthew A. Mensik, WSBA # 44260
Casey M. Bruner, WSBA # 50168
Asti M. Gallina, WSBA # 53361
WITHERSPOON KELLEY
422 W. Riverside, Suite 1100
Spokane, WA 99201
Telephone: (509) 624-5265
Facsimile: (509) 458-2728
Email: mam@witherspoonkelley.com
         cmb@witherspoonkelley.com
         amg@witherspoonkelley.com
*Attorneys for Plaintiff*

## IN THE U.S. DISTRICT COURT FOR THE
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TENET BEEF, LLC, a Washington limited liability company,<br><br>                              Plaintiff,<br><br>vs.<br><br>WASHINGTON STATE UNIVERSITY, a Washington state agency, ZHIHUA JIANG, an individual,<br><br>                              Defendants. | NO. 2:21-CV-00131<br><br>COMPLAINT<br><br>**JURY DEMAND** |

The plaintiff, TENET BEEF, LLC, by and through its attorneys of record herein, allege, claim and pray as follows:

COMPLAINT - 1

**WK** WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

# I. **PARTIES**

1.    Plaintiff TENET BEEF, LLC ("Plaintiff") is a Washington limited liability company licensed to do business in the State of Washington. Plaintiff was formed on April 14, 2020 by William Frank Hendrix ("Hendrix") and Callipyge Genetics, LLC ("Callipyge Genetics"). Hendrix is also a member of Callipyge Genetics, which is known for the discovery of the Callipyge Gene—a gene linked to abnormal musculature on Polled Dorset Sheep.    Hendrix and Callipyge Genetics assigned their intellectual and tangible personal property rights relating to the Tenet Test to Plaintiff. Accordingly, Plaintiff now owns all rights to the Tenet Test and any related intellectual property. Plaintiff has also been assigned any rights to causes of action relating to the Tenet Test that accrued prior to the assignment of the intellectual and tangible personal property.

2.    Defendant WASHINGTON STATE UNIVERSITY ("WSU") is a public university and an agency of the State of Washington.

3.    Defendant ZHIHUA JIANG is a Professor of Comparative Genomics at WSU.

# II. **JURISDICTION AND VENUE**

4.    Jurisdiction is proper in the U.S. District Court for the Eastern District of Washington, pursuant to 28 U.S.C. § 1331, as the action arises under

COMPLAINT - 2



WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

the laws of the United States, *see* First Cause of Action – DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, and under 28 U.S.C. § 1367.

5.     Venue is proper in the U.S. District Court for the Eastern District of Washington, pursuant to 28 U.S.C. § 1391(b)(1) as all parties reside in Washington State and at least one Defendant resides in the judicial district of the U.S. District Court for the Eastern District of Washington.

6.     Plaintiff has satisfied the pre-suit notice requirement under RCW 4.92.110.  On January 13, 2021, Plaintiff presented its claim to the Office of Risk Management in accordance with the requirements of RCW 4.92.100, .110. The sixty-day period under RCW 4.92.110 ran as of March 14, 2021.

### III. <u>STATEMENT OF FACTS</u>

### BACKGROUND

7.     Hendrix earned his Master of Science in Animal Science in 1977 from WSU. In 1989, Hendrix was hired by WSU Extension and stationed in Yakima County.

8.     Prior to joining WSU, Hendrix had begun work on an anomaly in Polled Dorset sheep resulting in extremely heavy muscling. Hendrix brought this research project with him to WSU. Ultimately, Hendrix and his team discovered that the trait was linked to a gene model, known as the Callipyge Gene. Hendrix and Callipyge Genetics have been credited with the discovery of the Callipyge

COMPLAINT - 3



WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

Gene, which has led to advancements in both human and veterinary genetic research.

9.      Hendrix continued his research and undertook substantial community outreach efforts in the agricultural science field. Hendrix has held leadership positions within WSU, the Yakima County Cattlemen Association, and numerous other organizations. He has received several awards in recognition of his achievements including WSU's Distinguished Service Award, the National Association of County Agricultural Agents Achievement Award and Distinguished Service Award, Yakima County Cattlemen's Association's Cattle Family of the Year Award, and five national communication awards for his educational programming.

10.     Hendrix retired from WSU in December 2020.

**BEEF TENDERNESS AND THE AMERICAN CATTLE INDUSTRY**

11.     The American Beef Cattle Industry is one of the largest and most dynamic agricultural economies in the United States.[1] According to the National Cattlemen's Beef Association, beef cattle are raised in all 50 states. *Id.* There are 913,246 total cattle and calf operations in the United States. Of these, 727,906 are beef farms and ranches. *Id.*

12.     According to the U.S. Department of Agriculture, "cattle and calves"

---

[1] *See National Cattlemen's Beef Association Industry Statistics*, NCBA.org, www.ncba.org/beefindustrystatistics.aspx (last visited Dec. 15, 2020).

COMPLAINT - 4

**WK** WITHERSPOON·KELLEY

Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

and "meat animals" accounted for more than $66 Billion in annual sales and this is separate and apart from the more than $20 Billion in annual milk sales.[2]

13.    Beef cattle is a large, profitable industry.

14.    Beef tenderness is strongly correlated to consumer satisfaction and demand. Accordingly, cattle known to produce more tender beef can be sold at a premium.

15.    Beef tenderness is determined by a scientific process. The scientific technique for measurements of beef tenderness is the Warner-Bratzler Shear Force instrument.  The instrument records the amount of pressure required to cut the meat, which corresponds to human bite pressure.  The less pressure required to cut the meat, the more tender the cut of meat.

16.    Beef tenderness is not correlated to fat or marbling.  Tenderness is an inherited trait and can be a naturally selected goal.

17.    The ability to test and identify the most profitable and valuable beef cattle, prior to slaughter, would be a valuable and marketable service in the national beef cattle industry.  This would allow cattlemen and ranchers to breed their most profitable cattle prior to slaughter and improve the overall quality of their herd.

COMPLAINT - 5



WITHERSPOON · KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

18.     Recognizing this market need, Callipyge Genetics and Hendrix worked to identify genetic markers and develop a proprietary process by which it could identify tender beef through genetic testing. Such a process would allow those in the beef industry to test their cattle for tenderness *prior* to slaughter, which would allow for better informed and more profitable breeding.

## DEVELOPMENT OF THE TENET TEST

19.     Callipyge Genetics and Hendrix were ultimately successful in developing a blood-based genetic test, the Tenet Test, which can determine whether cattle would produce tender beef. Callipyge Genetics and Hendrix also developed an objective metric for measuring and ranking the tenderness of beef. Under this metric, beef tenderness falls into one of three categories: average, Mid-Ten, and Tenet. Using this process, cattlemen and ranchers can test and certify their herds. They can then breed certified Tenet and Mid-Ten cattle and, over time, raise more tender, more marketable, and better cattle, improving the overall quality and profitability of their herd.

20.     The certification process has the following steps:

A cattle producer buys DNA cards and applies 3 or 4 drops of blood to the specialized blotter paper within the sample cards. The cards are mailed to Plaintiff.

DNA is extracted from blood samples.

Multistep detailed lab work is completed and analyzed.

COMPLAINT - 6



**WITHERSPOON·KELLEY**
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Cattle producer is notified by Tenet Beef, LLC if the sampled animals are Tenet™, Mid-Ten™ or Average.

A visual analysis is produced, indicating the presence of identified traits.

Callipyge Genetics evaluates results and produces tenderness certifications.

21.     The Tenet Test and certification process is the culmination of over a decade of research and testing performed by Hendrix and Callipyge Genetics.

22.     From 2011 to 2019, Callipyge Genetics tested cattle for genetic traits and tenderness in order to develop the process for identifying genetic markers that would predict "Tenet" tenderness. To do this, Callipyge Genetics collected and stored blood samples from hundreds of cattle. The blood samples are preserved on blotter paper. A small 2mm "punch" can be taken from each blood sample. Each punch has enough DNA to do approximately 10 DNA sequencing tests. This resulted in a catalogue of "verification samples."

23.     The collection of the verification samples began in the spring of 2011 and continued until 2019.  In February 2011, Callipyge Genetics and Hendrix purchased 1,298 calves and fed them hay for the remainder of the winter. They pastured them until Mid-August when they went into feedlot. They sold most but retained ownership through slaughter (March 2012) on approximately 120 animals to collect beef samples for physical tenderness evaluation.

COMPLAINT - 7



WK WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

24.    After determining the tenderness of the various cattle, Hendrix sent blood samples to a commercial DNA evaluation company, which was a significant investment. Hendrix physically collected and tested beef samples for tenderness and then statistically verified which animals matched tenderness in the DNA and physically.   This is a process, by the understanding of Callipyge Genetics and Hendrix, that had never been done before.

25.    After evaluating the DNA results, Hendrix and Callipyge Genetics identified specific genetic markers that consistently correlated with beef tenderness. Hendrix and Callipyge Genetics were able to accurately use the presence of these genetic markers to predict whether a live cow would produce Average, Mid-Ten, or Tenet quality beef.

26.    During the development of the Tenet Test and Tenet tenderness certification process, Callipyge Genetics registered the trademark "Tenet" as a "STANDARD CHARACTER MARK" with the United States Patent and Trademark Office. Serial No. 88629165.

27.    All funding, time commitment, labor and animals were private from Callipyge Genetics and Hendrix.  WSU was not involved in any aspect.

**NEW GENETIC MARKER TO BE TESTED**

28.    In the Spring of 2019, Callipyge Genetics and Hendrix wanted to test new genetic markers for correlation and predictability for "Tenet" tenderness. The identification of a new genetic marker would allow for the testing to be done

COMPLAINT - 8



WITHERSPOON · KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

while utilizing a smaller portion of animal DNA and would allow for additional R&D sampling, fast sample times, and a more profitable service.

29.     In May 2019, Callipyge Genetics and Hendrix contacted Defendant ZHIHUA JIANG ("Jiang"), a professor at WSU, to gauge Jiang's interest in being paid to provide testing services on Callipyge Genetics's and Hendrix's behalf. Hendrix made it clear that this was part of his ongoing business development for outside enterprises and was not part of either of their official duties as faculty members of WSU. Hendrix also made clear that all costs associated with the Tenet Test study and development would be paid by Hendrix. Hendrix represented to Jiang that this testing needed to stay confidential and proprietary. Jiang agreed that the testing would remain confidential and proprietary but stated that a formal agreement was not necessary under WSU's policies and procedures for Jiang's lab to be of service.

30.     After an initial meeting with Jiang in May 2019, Hendrix and Jiang met to identify the potential DNA markers that would be run under the test. At the time of the agreement, Jiang was not informed that all the animals the blood samples came from had been tested and certified at differing levels of tenderness to verify the Tenet Test.

31.     Jiang agreed to perform the testing services on behalf of Callipyge Genetics's and Hendrix's behalf. Hendrix and Jiang agreed that the testing would be performed for $5,000.00. Jiang set the price.

COMPLAINT - 9

32.    Later, Jiang contacted Hendrix and stated that he needed the $5,000.00 deposited into his account before testing could start. Hendrix and Callipyge Genetics did not have a services account with WSU at the time. Arranging a services provider account with WSU would take a few months, according to Jiang.

33.    To expedite the process, Jiang suggested that the monies be paid through the services account of Ag. Health Lab (Dr. Fred Muller's account) and that the monies would be, in part, to train the lab technicians and provide a benefit to Ag. Health Lab.

34.    All parties agreed and Callipyge Genetics and Hendrix paid WSU and Jiang, through Ag. Health Lab, to perform testing services.

35.    Callipyge Genetics and Hendrix provided Jiang the 96 Tenet tenderness verified samples that had taken nearly nine years and more than $1,000,000.00 to develop. Callipyge Genetics and Hendrix arranged for the Tenet team to attend Jiang's lab and observe the sequencing.

36.    Jiang's lab technician, Jennifer Michal, ran the agreed test on the verified samples. It was estimated that the testing would be complete by January 2020.

37.    While the initial testing of the verified samples is going on to determine whether a new genetic marker would provide Tenet tenderness predictability (the "Tenet Test"), Jiang approaches Hendrix and asked to be on the

COMPLAINT - 10



WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

"Tenet Team." He requested that future testing of samples would be done through his lab for $1.00 per sample. Jiang began contacting testing labs, such as AgriPlex, to negotiate a portion of the ongoing testing that Jiang would need to have done outside of WSU.  Tenet agreed to these terms.

## DEFENDANTS TAKE PLAINTIFF'S PROPERTY AND CLAIM IT BELONGS TO THEM

38.    After testing on the verified samples was completed, Jiang and Hendrix met to discuss the samples and the result of the testing. With Jiang present, Hendrix compared the testing results with the genetic marker that Hendrix hypothesized would result in a Tenet tenderness correlation.  At that point, Jiang realized what Hendrix and Callipyge Genetics had been testing for and saw the potential value of the IP on the market.

39.    Shortly thereafter, the conduct and demeanor of Jiang changed.

40.    In April 2020, Hendrix wrote to Dr. Jiang and stated:

Hi Zhihua,

My attorney is working with AgriPlex on nondisclosure's and contracts. We are very close to running.

We are setting up a services contract with you to analyze the raw data and then you send the three levels (Tenet, Mid-Ten and Normal) to us.

I believe we agreed on $1.00 per sample to be sent to you as you analyze. I want to send our first set of cards to the lab on or around May 10, 2020.

COMPLAINT - 11



WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

Best regards,

Frank.

41.    As of this April 2020 email, the testing had been done to identify the genetic marker that correlated with and predicted "Tenet" tender beef, the Tenet Test. The prior agreement to test the samples that Hendrix and Callipyge Genetics collected from consumers and clients was being drafted as was non-disclosure agreements. Hendrix and Callipyge Genetics were under the impression based on representations by Jiang, that they would be entering into a "services agreement," where Jiang, through WSU, would provide the testing services for the test developed by Hendrix and Callipyge Genetics and would respond with each test with the result: "Tenet, Mid-Ten and Normal."

42.    In response, however, Jiang wrote to Hendrix:

Hi Frank,

We never reached any agreement on this so far.  Now I would have $2.00 per sample from you to cover the cost. In addition, WSU owns the rights of the genetic markers and prediction equation.

Thanks,

Zhihua.

43.    In this April 2020 email, after nearly a year of providing testing services and working with and for Hendrix and Callipyge Genetics, Jiang makes a claim to the intellectual property of Hendrix and Callipyge Genetics.

COMPLAINT - 12

WK WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

44.    Hendrix and Callipyge Genetics never agreed that WSU would own any of the intellectual property they spent the last decade developing.

45.    Thereafter, Jiang agreed to speak with "ARC" about formalizing the services contract with WSU. On April 25, 2020, Hendrix wrote a services contract proposal for Jiang to provide to ARC.

46.    On April 28, 2020, Hendrix asked Jiang for an update on the contract. Jiang responded:

Thanks, Frank.

The meeting went well, overall. Just a few things:

Service fee: Two dollars ($2.00) per sample rather than one dollar ($2.00) [sic] per sample.

DNA sequences and mutations owned by WSU, but you will have the genotypes and tenderness scores.

WSU will be your exclusive service provider if you use our genetic markers.

Thanks,

Zhihua.

47.    This was the second time WSU attempted to wrest control over Hendrix's and Callipyge Genetics's intellectual property. Again, Hendrix and Callipyge Genetics declined. Thereafter, Jiang indicated that Hendrix would need to work with "Albert" on future contract negotiations.

48.    On May 8, 2020, Hendrix wrote the following email to Albert Tsui:

COMPLAINT - 13



WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

Hi Albert,

Dr. Zhihua suggested I send you an email to get an update on the contract we submitted two weeks ago. We offered Dr. Zhihua and the WSU Department of Animal Sciences $2.00 per sample for analysis of the rough data. We currently have everything necessary to run samples and do not need WSU to be involved in anyway. We offered this contract to help fund, what we believe to be important. If WSU does not desire to be involved we will move on.

Please give me an update.

Best regards,

Frank Hendrix

49.    Hendrix wanted to provide the services contract to WSU based on his long-time involvement and support for a program that he believes to be valuable and important to the industry and his community.

50.    In response, Albert Tsui responded as follows:

Hi Frank,

Thanks for reaching out. I meet [sic] with Zhihua last week to discuss the broad outlines of the draft agreement and pre-existing utility patents compromising markers and know how on the markers from Zhihua research. The agreement being redlined and being reviewed [sic] the Business Center to include some of WSU standard terms.

From a broad perspective, the services provided will be a "Services Agreement" with WSU where it is not contemplated new IP will be generated in providing those services. This is a critical distinction, otherwise it would be a Sponsored Project

COMPLAINT - 14



WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

Research and the budget and the cost estimate for the project would significantly increase.

I hope to forward a redline draft to you next week and we can schedule a Zoom call to discuss the details.

51.     This was WSU's third attempt to claim Hendrix's and Callipyge Genetics's intellectual property.  This time, WSU even described the research as the "Zhihua research."

52.     Hendrix and Callipyge Genetics rejected WSU's proposal and assertion that the IP was or would be the property of WSU.  Hendrix and Callipyge Genetics spent nearly a decade and more than $1,000,000.00 creating the verification sample set and researching the potential genetic markers. Hendrix and Callipyge Genetics owned the intellectual property. Hendrix and Callipyge Genetics paid WSU and Jiang to perform a service for testing.  In performing the test, Jiang discovered what the test was for, saw the market value of the test and verification samples, and began attempting to misappropriate the IP that Hendrix and Callipyge Genetics developed.

53.     After it was clear that the services contract would not be negotiated, as Hendrix and Callipyge Genetics would not give up any IP rights, Hendrix and Callipyge Genetics sought to recover their verification samples and the materials provided to Jiang and WSU.  When Hendrix asked Jiang to return the samples, Jiang responded that he did not know where they were.

COMPLAINT - 15



**WITHERSPOON·KELLEY**
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

54.    Hendrix then contacted AgriPlex, the laboratory that Jiang had contacted to perform part of the testing.  AgriPlex inadvertently confirmed that WSU had sent them the samples and that they were still in AgriPlex's possession. AgriPlex also represented that DNA from samples had been extracted and that WSU was performing development work on Hendrix's and Callipyge Genetics's verification samples. Plaintiff believes that the DNA extracted from the verification samples is still in possession of WSU and/or AgriPlex and that WSU is performing research and testing on DNA samples that rightfully belong to Plaintiff.

55.    Hendrix demanded the samples back and AgriPlex returned the samples since either "Hendrix" or "WFH" (Hendrix's initials)" were written on each of the samples.

56.    Several days after AgriPlex returned the samples, the Vice President of AgriPlex contacted Hendrix and informed him that AgriPlex was in legal trouble with WSU for returning the samples.

57.    After Hendrix's and Callipyge Genetics's samples were returned from AgriPlex, they were inspected.  Each sample had been "hole punched," and a large sample had been removed from each verification sample. The hole punched in each was significantly larger than any punch needed to perform the tests ordered. Plaintiff believes that Jiang, WSU, and/or their agents, hole punched the verification samples to generate a second, identical verification sample catalogue.

COMPLAINT - 16

58.    As of this pleading, WSU, Jiang, AgriPlex, and/or their agents have not returned the extracted DNA from the samples, the hole-punched samples, or the research that Hendrix and Callipyge Genetics ordered.

59.    Further, it is believed that WSU, Jiang, AgriPlex, and/or their agents are conducting research on the verification samples that Hendrix and Callipyge Genetics developed, which are Plaintiff's property.

60.    To further determine whether or not improper conduct was occurring, on September 24, 2020, Plaintiff submitted a public records request to view the documents related to the research he asked WSU to do on his behalf.  On December 13, 2020, he received the first installment of the public records.  Many of the documents were redacted. The reason for the redactions was stated as follows:

> Valuable formulae, designs, drawings, computer source code or object code, and research data obtained by an agency within five years of the request for disclosure are exempt from disclosure in accordance with RCW 42.56.270(1) and RCW 19.108, the Uniform Trade Secrets Act, as disclosure would produce private gain and public loss.

61.    WSU admits that the information and testing of the samples that Hendrix and Callipyge Genetics created is a trade secret. As of this filing, WSU has unreasonably failed to timely respond and provide the remaining public records.

COMPLAINT - 17



WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100     Phone: 509.624.5265
Spokane, Washington 99201-0300     Fax: 509.458.2728

62.    In 2020, Callipyge Genetics and other investors formed a spinoff company to continue the development, research, and marketing for the Tenet certification and Tenet testing.  The new company, Plaintiff, was assigned all of the rights, responsibilities, and obligations for all contracts and intellectual property that was developed or obtained related to the Tenet certification or Tenet genetic testing. Plaintiff now owns all of the IP that WSU and/or Jiang has misappropriated.

63.    On information and belief, Jiang, WSU, and/or their agents, continue to possess Plaintiff's valuable trade secrets, which were acquired from Hendrix and Callipyge Genetics, including, but not limited to, the physical verification samples or the DNA resulting therefrom.

64.    Based on information and belief, Jiang, WSU, and/or their agents, continue to possess Plaintiff's valuable trade secrets, which were acquired from Hendrix and Callipyge Genetics, including, but not limited to, the data and genetic testing that Hendrix and Callipyge Genetics paid to have performed on their behalf.

65.    On information and belief, Jiang, WSU, and/or their agents, continue to possess Plaintiff's valuable trade secrets, which were acquired from Hendrix and Callipyge Genetics, including, but not limited to, the information and propriety knowledge of which genetic markers correlate to the Tenet tenderness certification.

COMPLAINT - 18



WITHERSPOON · KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100     Phone: 509.624.5265
Spokane, Washington 99201-0300     Fax: 509.458.2728

66.    On information and belief, Jiang, WSU, and/or their agents, are continuing to test and/or perform research on the physical samples and valuable trade secret information of Plaintiff, which were acquired from Hendrix and Callipyge Genetics.

### PLAINTIFF'S ATTEMPT TO RESOLVE ITS CLAIMS WITH DEFENDANTS

67.    WSU has enacted a policy governing certain issues involving intellectual property—University's Executive Policy #38—University Policies on Intellectual Property, Technology transfer, and Commercialization (the "IP Policy").

68.    Under the IP Policy, disputes over the ownership and inventorship of "patentable discoveries, inventions, and proprietary information developed using University equipment supplies, facilities, inventor time, or university proprietary information; or which relate directly to the University's business, research, or development" may be appealed through the Intellectual Property Ownership and Inventorship Appeals process (the "IP Appeal Process").

69.    To initiate the process, at least one party to the dispute must deliver, in writing, a request for dispute resolution to the OC Director.

70.    Within five business days of the receipt of the dispute resolution request, the OC Director must notify the dean(s) of the involved college(s) and

COMPLAINT - 19



WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

request that the dean(s) review and resolve the dispute, if possible, within 30 business days.

71.    If the dispute cannot be resolved, it is referred to the Office of Commercialization Director, who has 45 business days to complete a review. This decision is then reviewed by the Vice President for Research, who gives notice of the determination to the disputing parties. If the parties do not accept that determination, they may pursue additional appellate steps under the IP Policy.

72.    On January 12, 2021, Hendrix and Plaintiff sent a Notice of Request for Dispute Resolution to WSU pursuant to the IP Policy. Hendrix and Plaintiff explained that they did not believe that the IP Policy applied to their claims but nonetheless offered to participate in the dispute resolution process in a show of good faith.

73.    On February 1, 2021, Hendrix and Plaintiff sent a letter to the Assistant Attorney General inquiring as to the status of the Notice of Request for Dispute Resolution. They requested a response by February 8, 2021. Hendrix and Plaintiff have received no response.

74.    On February 26, 2021, Hendrix and Plaintiff sent another letter to the Assistant Attorney General inquiring as to the status of the Notice of Request for Dispute Resolution. They further advised that, if they received no response by March 4, 2021, they would conclude that WSU had elected not to engage in the

COMPLAINT - 20



WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300       Fax: 509.458.2728

alternative dispute resolution process and would proceed to litigation. Hendrix and Plaintiff have received no response.

### IV.  First Cause of Action
### (DEFEND TRADE SECRETS ACT – 18 U.S.C. § 1836)
### (Jiang & WSU)

75.     Plaintiff has researched, developed and created valuable trade secrets from its predecessor companies and founders that took nearly a decade and more than $1,000,000.00 to develop. Plaintiff's trade secrets include business, scientific, technical, economic, and/or engineering information, including plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, and/or procedures, stored and present in both in tangible and intangible form. Plaintiff has taken reasonable steps to protect its trade secrets and prevent the unauthorized release of that information. Plaintiff has equitable and legal title to the physical and non-physical trade secrets it has acquired and / or developed.

76.     Defendants Jiang and WSU misappropriated Plaintiff's trade secrets by claiming those trade secrets to be theirs, refusing to return the physical samples, by performing unauthorized tests and research on the samples, by hole punching the samples for unauthorized use, by keeping and continuing research and development of the intellectual process and identification procedures.

COMPLAINT - 21



WITHERSPOON · KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

77.    Defendants Jiang and WSU misappropriated the trade secrets though improper means, including theft, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.

78.    Plaintiff has been and is continuing to be injured by Defendants Jiang and WSU's misappropriation of trade secrets.

## V.  Second Cause of Action
## (CONVERSION)

79.    Plaintiff owns the legal and equitable rights to the verification samples that it spent nearly a decade and over $1,000,000.00 developing, as well as the DNA that was extracted from those verification samples.

80.    Defendants WSU and Jiang willfully interfered with Plaintiff's chattel, without lawful justification, by hole punching and retaining the verification samples, or a sub-portion thereof, and Defendants' actions have deprived Plaintiff of the possession of it.

## VI.  Third Cause of Action
## (UNIFORM TRADE SECRETS ACT – RCW 19.108.010 *et seq.*)

81.    Plaintiff possesses valuable trade secrets.

82.    Defendants Jiang and WSU misappropriated Plaintiff's trade secret.

COMPLAINT - 22

**WK  WITHERSPOON · KELLEY**
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

83.    Defendants' misappropriation of Plaintiff's trade secrets is a direct and proximate cause of Plaintiff's damages, including, but not limited to, lost profits and lost trade secrets;

84.    In addition to causing damages to the Plaintiff, Defendants' misappropriation has resulted in Defendants' receipt of a benefit that in justice and fairness belongs to the Plaintiff.

### VII.  Fourth Cause of Action
### (INJUNCTIVE RELIEF)

85.    Plaintiff seeks injunctive relief under the Defense of Trade Secrets Act, 18 U.S.C. § 1836.

86.    Plaintiff seeks injunctive relief under Washington's Uniform Trade Secrets Act, RCW 19.108, *et. seq.*

### VIII. Fifth Cause of Action
### (VIOLATION OF WASHINGTON'S PUBLIC RECORDS ACT)

87.    Washington's Public Records Act, RCW 42.56, *et. seq.*, imposes on public agencies a duty to "promptly" make requested records available for inspection and/or copying.

88.    Washington Public Records Act, RCW 42.56.550, authorizes a party who was denied an opportunity to inspect or copy public records, or a party who believes that the agency is taking an unreasonable amount of time to respond to a public records request, to seek judicial review of agency actions.

COMPLAINT - 23



**WITHERSPOON·KELLEY**
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100        Phone: 509.624.5265
Spokane, Washington 99201-0300              Fax: 509.458.2728

89.    WSU has effectively denied Plaintiff from inspecting public records and is not timely producing documents that have been requested.  On information and belief, Plaintiff believes that delay and denial of public records is motivated by WSU's ongoing improper and unlawful attempts to misappropriate Plaintiff's trade secrets.

## IX.  JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands that its claims be heard by a jury.

## X.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.    Damages in an amount to be proven at trial;

2.    Injunctive relief under federal and state trade secret law enjoining Defendants from research, testing, developing, or in any way profiting from the intellectual property and trade secrets of the Plaintiff; an order requiring Defendants to return all intellectual property, DNA stores, verification samples, test results, research data, and anything other thing, data, or information related to or resulting from Plaintiff's intellectual property;

3.    An order finding that WSU failed to comply with the Public Records Act;

4.    An order directing WSU to fully comply with the Public Records Act;

COMPLAINT - 24

**WK  WITHERSPOON·KELLEY**

Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

5.      Costs and attorneys' fees allow by law;

6.      Exemplary damages allowed by law;

7.      All other relief the Court finds just and available under law and equity.

Dated this 2nd day of April 2021.

WITHERSPOON · KELLEY

By:_____s/Matthew A. Mensik_____
Matthew A. Mensik, WSBA #44260
Casey M. Bruner, WSBA # 50168
Asti M. Gallina, WSBA # 53361
mam@witherspoonkelley.com
cmb@witherspoonkelley.com
 amg@witherspoonkelley.com
422 W. Riverside Avenue, Suite 1100
Spokane, WA  99201-0300
*Attorneys for Plaintiff*

COMPLAINT - 25



WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100       Phone: 509.624.5265
Spokane, Washington 99201-0300       Fax: 509.458.2728